UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MARY ELIZABETH MORGAN,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.

1:18-CV-00884-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18).

Plaintiff Mary Elizabeth Morgan ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 16) is granted.

## BACKGROUND

Plaintiff protectively filed an application for SSI benefits on February 12, 2015 alleging disability since June 25, 2013, and subsequently amending her alleged onset date to June 26, 2014, due to bipolar disorder, personality disorder, and anxiety. (*See* Tr. 10, 30, 157, 177, 244).[2] Plaintiff filed a prior SSI application on June 26, 2014, which was

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

denied on initial review and not appealed.[3] (Tr. 77). Plaintiff's current SSI benefits application was initially denied on June 9, 2015. (Tr. 84-89). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Melissa Lin Jones on August 17, 2017. (Tr. 10, 28, 90-95). ALJ Jones heard testimony from plaintiff, who was represented by counsel, as well as from Millie Droste, an impartial vocational expert. (Tr. 28-74.). On October 24, 2017, ALJ Jones issued a decision that plaintiff was not disabled under the Act. (Tr. 7-27). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 153-156). Plaintiff's request for review of the decision was denied by the Appeals Council on June 8, 2018. (Tr. 1-4). The ALJ's October 24, 2017 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on December 9, 1991, plaintiff was 22 years old on the alleged disability onset date and 25 years old on the date of the hearing. (Tr. 21, 34, 76). Plaintiff is able to communicate in English, has at least a high school education, and did not have any past relevant work. (Tr. 21).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[3] Although the ALJ granted plaintiff's request to amend the alleged onset date during the hearing, she determined the relevant time period for this claim to be February 12, 2015, the date the current application was filed. (Tr. 12). This Court takes no position on reopening or revision of the prior determination because it does not affect the disability determination.

2

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* § 404.1520(b); 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks

4

whether the claimant has a "severe impairment." *Id.* § 404.1520(c); 416.920(c). To make

this determination, the Commissioner asks whether the claimant has "any impairment or

combination of impairments which significantly limits [the claimant's] physical or mental

ability to do basic work activities." *Id.* As with the first step, if the claimant does not have

a severe impairment, he or she is not disabled regardless of any other factors or

considerations. *Id.* Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions: first, whether that severe impairment meets

the Act's duration requirement, and second, whether the severe impairment is either listed

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1. *Id.* § 404.1520(d); 416.920(c). If the claimant satisfies both requirements of

step three, the Commissioner will find that he or she is disabled without regard to his or

her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the

Commissioner's analysis proceeds to steps four and five. Before doing so, the

Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.*

§ 404.1520(e); 416.920(e). RFC "is the most [the claimant] can still do despite [his or her]

limitations." *Id.* § 404.1545(a)(1); 416.945(a)(1). The Commissioner's assessment of the

claimant's RFC is then applied at steps four and five. At step four, the Commissioner

"compare[s] [the] residual functional capacity assessment . . . with the physical and

mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f); 416.920(f). If,

based on that comparison, the claimant is able to perform his or her past relevant work,

the Commissioner will find that the claimant is not disabled within the meaning of the Act.

*Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* § 404.1520(g)(1); 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.  *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of February 12, 2015. (Tr. 12). At step two, the ALJ found that plaintiff had the following severe impairments: (1) anxiety disorder; (2) posttraumatic stress disorder; and (3) syncope/pseudo seizures.[4] (Tr. 12). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13). Before

---

[4] Also at step two, the ALJ noted that plaintiff testified that she had a bicycle accident that resulted in subsequent memory loss, slow speech and seizures, and that she suffers from headaches a few times a week. (Tr. 12-13). The ALJ determined there is no evidence in the record that plaintiff's headaches/traumatic brain injury significantly limit her ability to perform basic work activities. (*Id.*). The symptoms from plaintiff's syncope/pseudo seizures have been incorporated in to the RFC determination. (*Id.*). Additionally, the ALJ notes that plaintiff's medical history shows a diagnosis of bipolar disorder, which plaintiff testified was a misdiagnosis. (Tr. 13). Lastly, the ALJ noted that plaintiff testified about past issues with substance abuse. (*Id.*) The ALJ concluded that the plaintiff's alcohol, cannabis, cocaine, and heroin dependence/abuse are in sustained remission and are not severe impairments. (*Id.*).

6

proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> [T]he [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but the [plaintiff] is only capable of simple, routine, and repetitive tasks not performed at production-rate pace. She can only have occasional interaction with supervisors and rare (meaning less than occasional but not never, sometimes referred to as incidental) interactions with coworkers or the public. She can make simple decisions when dealing with changes in the work setting. She is unable to work at unprotected heights or around heavy moving mechanical parts. She can only occasionally climb ladders, ropes, or scaffolds.

(Tr. 14-15).

Proceeding to step four, the ALJ concluded that plaintiff did not have any past

relevant work. (Tr. 21). Proceeding to step five, and after considering testimony from

Vocational Expert ("VE") Droste in addition to plaintiff's age, work experience and RFC,

the ALJ found that there are other jobs that exist in significant numbers in the national

economy that plaintiff could perform, such as cleaner-hospital, cleaner-industrial, and

cleaner-II. (Tr. 21). Accordingly, the ALJ found that plaintiff had not been under a disability

within the meaning of the Act from February 12, 2015, the date the application was filed,

through October 24, 2017, the date of the decision. (Tr. 22).

IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is

not supported by substantial evidence because the evidence of record shows that plaintiff

would not be able to sustain full-time work activity on a regular and continuous basis.

(*See* Dkt. No. 12-1 (Plaintiff's Memo of Law)). For the reasons that follow, the Court finds

that the ALJ considered all relevant evidence on the record and properly applied the

Social Security regulations in making the RFC determination. *See* 20 C.F.R. § 416.945;
SSR 96-8p, 1996 LEXIS 5.

Plaintiff contends that the ALJ erred in giving limited weight to the opinions of
plaintiff's mental health providers, which opined that plaintiff is unable to sustain full-time
work activity based on symptoms of anxiety and posttraumatic stress disorder.
Specifically, plaintiff asserts that the ALJ should have given greater weight to portions of
opinions from Ms. Brown, a mental health counselor at Horizon Health Care, and Ms.
Ostrom, a nurse practitioner at Horizon Health Care. Ms. Brown provided opinions in April,
March, and October 2015, which offered differing conclusions about the level of
impairment suffered by plaintiff, and were afforded varying weight by the ALJ. (Tr. 18-19,
308-310, 1043-1046, 1489).

Plaintiff takes specific issue with the ALJ's evaluation of the October 13, 2015
Mental Residual Functional Capacity Assessment submitted by Ms. Brown. There, Ms.
Brown opined that plaintiff had only occasional ability to perform work-related mental
activities such as: maintain attention and concentration for extended periods; perform
activities within a schedule, maintain regular attendance and be punctual within
customary tolerances; and complete a normal workday and workweek without
interruptions from psychologically based symptoms. (Tr. 1043-1046). She estimated that
plaintiff was likely to be absent from work as a result of impairments or treatments an
average of three days per month, and that plaintiff would need to take unscheduled breaks
from work approximately two to three times per work day. (Tr. 1045). She also stated that
plaintiff is "diagnosed w[ith] bipolar disorder and experiences mood lability that impair her

ability to complete tasks, concentrate on work related tasks, and manage her emotions in stressful environments." (*Id.*).

Plaintiff also challenges the ALJ's weighing of the April 11, 2017 Medical Source Statement submitted by Ms. Ostrom. There, Ms. Ostrom opined that plaintiff was seriously limited in several subdivisions of unskilled work capabilities, including understanding and remembering very short and simple instructions, working in coordination with or proximity to others without distraction, and performing at a consistent pace with an unreasonable number and length of rest periods. (Tr. 1373-1378). The statement includes an opinion that plaintiff's ability to complete a normal workday and workweek without interruption from psychologically based symptoms is "limited but satisfactory," and an appraisal that plaintiff is stressed by remaining at work for a full day. (Tr. 1375, 1377). She stated that the average number of absences from work attributable to plaintiff's impairments or treatments was unknown. (Tr. 1377).

The Plaintiff argues that these opinions support a finding that her mental impairments leave her unable to work on a "regular and continuing basis," which is defined in SSR 96-8p as working "8 hours a day, for 5 days a week, or an equivalent work schedule." To support this, she points to evidence that she dropped out of traditional school, lost jobs because of her psychological symptoms, and required multiple hospitalizations. Plaintiff submits that Ms. Brown and Ms. Ostrom's opinions about her inability to sustain full-time work activity are also consistent with her own testimony about her impairments (Tr. 37-49) and the opinions within several mental health reports from other providers at Horizon Health Services which state that plaintiff is limited to part-time work. (Tr. 1488-1491, 1493). It is noted, and the plaintiff concedes, that any opinion

assessing that plaintiff is "unable to work" full-time is not dispositive of the case because that is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d).

The ALJ is responsible for assessing a claimant's residual functional capacity based on all relevant medical and other evidence. 20 C.F.R. § 416.945; 946(c). In determining RFC, the ALJ must consider objective medical evidence and medical source opinions, as well as nonmedical information and claimant's own statements about the intensity, persistence, and limiting effects of symptoms. *Id.* § 416.945; SSR 16-3p, 2016 SSR LEXIS 4. The Regulations further direct the ALJ to consider whether there are any inconsistencies in the evidence, and the extent to which there are any conflicts between claimant's statements and the rest of the evidence about how a claimant's symptoms affect her. *Id.* § 414.929(c)(4).

The treating source opinions at issue are those of a nurse practitioner and a mental health counselor which are not "acceptable medical sources" and are not entitled to controlling weight under the applicable Regulations. *See* 20 C.F.R. 416.927(f); SSR 06-03p, 2006 SSR LEXIS 5. Nevertheless, the opinions of these "other sources" may be considered by the ALJ when assessing the severity of claimant's impairment and ability to work. *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d. Cir. 2008). Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under the rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. SSR 06-03p. Further, whether rendered by an acceptable or non-acceptable source, the more consistent a medical opinion is with the record as a whole, the more weight should be given to that opinion. *See* 20 C.F.R. § 416.927(c)(4); (f)(1). "In determining what weight

to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

In her decision, the ALJ gave great weight to Ms. Brown's April and March 2015 opinions that plaintiff has no limitations in memory, sustaining concentration, persistence, and pace, and social interaction; and that she has some limitation in adaptation and change in routine due to problems being overwhelmed with multiple tasks. (Tr. 18). She also gave considerable weight to the opinion of an unnamed treatment provider (Dr. Wolin) who stated plaintiff should avoid exposure to large groups or situations where she could be overwhelmed. (Tr. 18-19, 1491). The ALJ explained that she afforded substantial weight to these opinions because they are supported by and consistent with plaintiff's testimony about symptoms from anxiety and PTSD, her positive response to treatment, and her considerable and continued daily activities. (Tr. 18-19). The RFC's non-exertional restrictions which limit the plaintiff to simple, unskilled work with occasional to rare social interactions and only simple decision-making regarding changes in work setting are reflective of these opinions.

The ALJ gave limited weight to Ms. Brown's October 2015 opinion, as well as a statement within her previous opinion that plaintiff was limited to part-time work, because her "subsequent treatment notes throughout 2016 show that the [plaintiff] admitted that she was doing well even though she was not following prescribed treatment and was working at times throughout that year." (Tr. 19). The ALJ gave some weight to Ms. Ostrom's April 2017 opinion that plaintiff is seriously limited in social interactions and behavior, performing detailed tasks, and handling the stress of semiskilled and skilled

11

work. (Tr. 19). She explained that this opinion was consistent with the plaintiff's improved anxiety at that time and plaintiff's overall positive response to treatment. (*Id.*) It was proper for the ALJ to give more weight to the portions of Ms. Brown and Ms. Ostrom's opinions that are supported by the record, and to discount those portions that were contrary to substantial evidence on the record. *See Veino,* 312 F.3d at 588 (holding that it is within the province of the ALJ to resolve conflicts in the evidence and find parts of a treating physician's opinion unpersuasive as contrary to a consultative examination and lacking objective medical evidence); *Gray v. Colvin,* 2015 LEXIS 110211, 2015 WL 5005755, at *13 (W.D.N.Y. Aug. 20, 2015) ("The ALJ was within his discretion to accept certain portions of [a medical] opinion, but reject those that were not supported by her own treatment notes or other substantial record evidence).

In making her RFC assessment, the ALJ also considered medical evidence and opinions from Christine Ransom, Ph.D., a consultative examiner from plaintiff's prior SSI application; Dr. Santarpia, a consultative examiner for the current application; Mary Webb, LCSW-R, a treating source; Olivia Smith-Blackwell, M.D., a treating physician providing a physical ability assessment; and M. Marks, Ph.D., a State agency psychological consultant. (Tr. 18-20). She awarded little weight to each of these opinions for various reasons explained in her decision. *(Id.).* She also considered and gave little weight to plaintiff's average Global Assessment of Functioning scores from mental health providers and the submitted report of Mr. Collins, a friend of plaintiff. (Tr. 20). Reviewing plaintiff's testimony that her mental health symptoms prevent her from working, ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence on the record for the reasons explained in this decision." (Tr. 16).

The ALJ made her findings based on the relevant medical and other evidence in accordance with 20 C.F.R. § 416.945(a)(3), and she discussed plaintiff's treatment records, hearing testimony, and credibility in making the RFC determination. *See Majdandzic v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 180068, at *14 (W.D.N.Y. Oct. 19, 2018). The decision provided a detailed discussion of what evidence the ALJ looked to in weighing the mental function assessments and opinions. She pointed to April 2015 counseling notes from Ms. Brown which showed that, with continued medication and treatment compliance, plaintiff had a stable euthymic mood, normal thought processes and content, and intact judgment. (Tr. 16, 308). During 2015, plaintiff also reported that she was enrolled in school online and was working part-time in child care. (Tr. 16, 452, 998). Despite a period of increased anxiety related to a change in treatment providers towards the end of 2015, the ALJ summarized that Horizon Health treatment notes from mid-2016 reflect that plaintiff's symptoms were improving and she was displaying normal mental functioning, e.g. normal judgment, normal thought content, and intact memory. (Tr. 17). In November 2017, plaintiff told her treating physician that she was no longer seeing a psychiatrist or mental health counselor nor taking any medications since November 2015. She added that she "feels really good" and has infrequent attacks of symptoms. (Tr. 17, 1286-1290). Horizon Health progress notes from September 2016 also record plaintiff stating that she felt good despite anxiety and inconsistently taking medications. (Tr. 17, 497). The record also reflects that plaintiff was hospitalized for brief

13

periods in January 2015 and January 2017. In both instances, the ALJ noted that plaintiff

suffered worsening anxiety without medications and experienced an improved condition

soon after resuming her medications. (Tr. 16-17, 298-307).

When evaluating disability, the ALJ acts appropriately in considering improvement

with treatment and the longitudinal record of treatment successes and failures. *See* SSR

16-3p. Plaintiff's RFC was calculated based on substantial evidence that her anxiety and

other symptoms were notably reduced with medication, counseling, and other treatment.

*See Reices-Colon v. Astrue,* 523 Fed. Appx. 796, 799 (2d Cir. 2013) (substantial evidence

of symptom improvement found in treatment notes showing that medication "seems to be

helping" and that plaintiff was "feeling better" with treatment); *Marnell v. Comm'r of Soc.

Sec.,* 2018 U.S. Dist. LEXIS 127046, 2018 WL 3620152, at *42 (W.D.N.Y. July 30, 2018)

("The record, particularly a longitudinal review of the treatment notes, demonstrates that

although [plaintiff] suffered from bipolar disorder and generalized anxiety disorder, his

mental health symptoms and functioning generally improved when he was compliant with

his prescribed medication regimen). Here, substantial evidence is found on the record

showing that plaintiff's symptoms did improve with treatment and medication. The ALJ

did not err in making this assessment.

Despite Ms. Brown and Ms. Ostrom's opinions that plaintiff would be absent from

work more than three days per month, and would frequently be off task during the

workday, the ALJ was not bound to accept these views as determinative, but simply to

consider and weigh them in light of the entire record. *See Matta v. Astrue,* 508 Fed. Appx.

53, 56-57 (2d Cir. 2013) (ALJ did not err in giving less weight to treating psychiatrist's

opinion about excess absences from work because substantial evidence was found to

support the conclusion that plaintiff, with proper treatment, could work on a regular and continuing basis despite fluctuating symptoms and episodic nature of bipolar disorder).

Further, plaintiff's assertion that her history of losing jobs supports Ms. Brown and Ms. Ostrom's opinions is not sufficient to override the ALJ's determination. A history of being fired from jobs based on symptoms of mental impairments does not foreclose on the conclusion that an individual can maintain substantial gainful employment with appropriate occupational limitations. *See Corbit v. Colvin*, 2015 U.S. Dist. LEXIS 171178 (D. Conn. April 20, 2015) (holding that plaintiff's testimony and neuropsychologist opinion that plaintiff had been fired several times and was at high risk for losing jobs because of psychological problems (mood lability, irritability, low frustration tolerance, verbal impulsivity, and difficulty with change) did not prevent a finding of substantial evidence supporting the RFC determination that plaintiff could sustain the mental demands of simple work); *Aregano v. Astrue*, 882 F.Supp. 2d 306 (W.D.N.Y. July 30, 2012); *remanded on other grounds* (finding substantial evidence supporting ALJ's determination that plaintiff had only moderate difficulties in social functioning despite evidence that he had difficulty holding jobs because of problems getting along with people and not wanting to go to work).

Plaintiff additionally argues that her syncopal episodes and head injury caused by a bicycle accident in July 7, 2016 caused her disabling limitations. However, plaintiff testified at the hearing that she had not had any syncope episodes in months and that she did not remember the last time she had one. (Tr. 60). The ALJ described that treatment notes show plaintiff suffering syncope/pseudo seizures during 2015, but noted the record shows only two episodes of syncope from 2016 through February 2017, which

15

includes a time period after plaintiff's bicycle accident. (Tr. 17-18). The ALJ detailed that Plaintiff received treatment from Steven Horn, M.D., who diagnosed her with vasovagal events and found that plaintiff had no recurrent syncope with lifestyle modifications as of January 12, 2017. (Tr. 711-712, 729). Additionally, the record includes treatment records from October 6, 2016 in which plaintiff's primary care physician, Dr. Smith-Blackwell, notes that although patient reports "occasional palpitations, dizziness and lightheadness, she is unsure if she has had further syncope." (Tr. 718-720). Based on these "random, but infrequent" episodes, the ALJ placed limitations on the plaintiff's ability to work in unprotected heights, around heavy moving mechanical parts, and in climbing ladders, ropes, and scaffolds. (Tr. 18). This Court holds that the ALJ did not err in determining plaintiff's RFC capacity based on substantial evidence in the record relating to syncope/pseudo seizures.

Overall, the ALJ determined that plaintiff experiences symptoms from anxiety and posttraumatic stress disorders, but that her symptoms and functioning improved with conservative treatment and did not prevent her from performing work with some non-exertional limitations. (Tr. 17, 21). The Court finds that the ALJ did not err by failing to fully credit the opinions set forth in the mental health assessments. The ALJ's findings are supported by substantial evidence in the record, and the RFC determination properly reflects areas where the evidence indicated substantial limitations in functioning, e.g. impairments in handling stress, social interactions, decision-making, and adapting to changes in workplace.

Lastly, Plaintiff argues that the ALJ improperly posed her hypothetical questions to the vocational expert which prevented a finding of disability. Based on the opinions of Ms.

Brown and Ms. Ostrom, plaintiff asserts that the ALJ should have included limitations of plaintiff being off-task and missing more than three days of work per month. Here, the hypothetical questions closely tracked the ALJ's residual functional capacity assessment. (Tr. 70-73). If the ALJ did not err in its residual functional capacity analysis, and the vocational expert's testimony shows that there are job existing in the national economy that accommodate the RFC limitations, then substantial evidence supports the step-five determination. *See Suttles v. Colvin*, 654 Fed. Appx. 44, 47-48 (2d Cir. 2016); *accord McIntyre v. Colvin*, 758 F.3d 146, 151-152 (2d Cir. 2014). Having found that substantial evidence supported the ALJ's RFC determination, this Court holds that hypothetical questions posed to VE Droste were appropriate based on the RFC limitations.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  November 26, 2019
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge